MARC E. MAYER (SBN 190969);
mem@msk.com
EMILY F. EVITT (SBN 261491)
efe@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff Manwin Licensing
International S.à.r.l.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANWIN LICENSING INTERNATIONAL SARL, a Luxembourg Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS BULGIN, a/k/a "Gill Manwinder," "Yi Weng," "Chris Hill," "contact@Manwinsucks.com," "Jim Jagen," and "Radishdreams", an individual, JAMES MARTIN, an individual, and Does 1-10, inclusive<br><br>Defendant. | CASE NO.  12-02484 GW (SHx)<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>(1) VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT<br>(2) DEFAMATION<br>(3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE<br>(4) UNFAIR COMPETITION<br><br>JURY DEMAND |

Mitchell
Silberberg &
Knupp LLP

4575548.3/43277-00096

Plaintiff Manwin Licensing International S.à.r.l. ("Manwin") avers as follows:

## PRELIMINARY STATEMENT

1. Manwin owns and licenses the trademarks and domain names used for many of the most popular adult-oriented websites, including YouPorn.com, the single most popular free adult video website on the Internet, as well as xTube.com, Pornhub.com, and Brazzers.com, to cite only a few examples. Manwin also manages worldwide online content under the "Playboy" trademark and runs Playboy TV, which has its principal place of business in this judicial district, under license from Playboy Enterprises, Inc. Manwin and its brands are known throughout the world as signifiers of high-quality adult-oriented content. By this action, Manwin seeks to put an immediate stop to, as well as obtain redress for, a campaign of harassment, defamation, and trademark infringement propagated by Defendants that was designed to extort hundreds of thousands of dollars from Manwin.

2. Defendants are in the "business" of registering Internet domain names incorporating trademarks owned by others (a practice known as "cybersquatting"). Cybersquatters, in general, seek to obtain unjustified payments from trademark owners who recognize that the cost of pursuing such infringers often is greater than purchasing the domain name from the cybersquatter. Defendants, however, have taken this concept to a new level. As part of an elaborate scheme to extort a payment from Manwin, Defendants selected Manwin as the target of a massive, ongoing harassment campaign. In furtherance of this campaign, Defendants:

- Registered dozens of domain names incorporating Manwin's trademarks (the "Manwin Domains").

- Created a Twitter account (using the handle @ManwinSucks) and Blogspot Page (manwinsucks.blogspot.com) for the purpose of disseminating false and defamatory material about Manwin and launch public campaigns to harm

Manwin's business interests (including unfounded allegations of involvement in child pornography).

- Created a slew of fake names and "personas" who purported to own each of the infringing Manwin Domains; publicly claimed that they were being "harassed" by Manwin over their "legitimate" domain names; contacted Manwin's business partners; and then made exorbitant monetary demands on Manwin for sale of the infringing Manwin Domains.

- Invented a nonexistent individual, "Gill Manwinder," and then used that fake name in an attempt to interfere with Manwin's trademark application by claiming that the "Manwinder" family name was being tarnished by Manwin.

- Sent dozens of e-mails to Manwin and its employees threatening to dilute the Manwin trademark and divert Manwin's traffic to Defendants' own websites and the infringing Manwin Domains.

3. The purpose of the foregoing conduct was to so annoy and harass Manwin, and to cause such harm and disruption to Manwin's brand, its public image, and its business relationships, that Manwin would pay Defendants to purchase the infringing Manwin Domains and cease their activities. Indeed, Defendants' conduct described herein is merely the latest in an ongoing pattern of conduct targeted at a variety of other entities. Since filing its Complaint, Manwin has learned that Defendants have registered hundreds or thousands of infringing domain names, including dozens of domain names using Manwin's trademarks. Defendant Bulgin recently attempted to extort payments from the company Imperial Tobacco by purchasing the domain name "imperialtobacco.co" and then using fake names in order to defraud the World Intellectual Property Organization ("WIPO") Arbitration Panel. The WIPO Panel found that Defendant Bulgin's conduct was a "calculated scam, designed to extract from the Complainant as much money for the transfer of the Domain Name as possible."

4. Defendants' conduct is willful and outrageous, and has caused, and is continuing to cause, severe and irreparable damage to Manwin. This lawsuit seeks to enjoin such conduct and compensate Manwin for the injury it suffered.

## JURISDICTION AND VENUE

5. This is an action arising under the Lanham Act, 15 U.S.C. § 1125, et seq. and under California statutory and common law.

6. This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 in that it involves an action arising under the federal Lanham Act. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 over those of Manwin's claims that arise under the laws of the State of California.

7. Defendants are subject to personal jurisdiction in the State of California because their acts and omissions took place in substantial part and caused impacts in the State of California, including in Los Angeles County, California.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts, omissions and events giving rise to the claims asserted in this Complaint occurred in this judicial district.

## THE PARTIES

9. Plaintiff Manwin Licensing International S.à.r.l. is, and at all relevant times was, a business entity organized as a "Société à responsabilité limitée" under the laws of Luxembourg, and having its principal place of business in the City of Luxembourg, Luxembourg. Manwin's affiliates and licensees include Manwin USA, Inc., Manwin D.P. Corp., and Playboy Plus Entertainment, Inc., all of which have principal places of business in Los Angeles, California.

Mitchell Silberberg & Knupp LLP

3

4575548.3/43277-00096

10. Manwin is informed and believes, and on that basis avers, that at all times relevant herein, Defendant Nicholas Bulgin is and was a resident of the State of Georgia. Manwin is informed and believes, and on that basis avers, that Defendant Bulgin has registered and owned hundreds of unauthorized, infringing domain names, including but not limited to the infringing Manwin Domains. Manwin is informed and believes, and on that basis avers, that Bulgin has used the false names "Gill Manwinder," "Yi Weng," "Chris Hill," "contact@Manwinsucks.com," "Jim Jagen," and "Radishdreams."

11. Manwin is informed and believes, and on that basis avers, that at all times relevant herein, Defendant James Martin is and was a resident of the State of Florida. Manwin is informed and believes, and on that basis avers, that Defendant Martin has registered and owned hundreds of unauthorized, infringing domain names, including but not limited to the infringing Manwin Domains. Manwin is informed and believes, and on that basis avers, that as of the date of this First Amended Complaint, Martin is the holder of the infringing Manwin Domain www.manwin.us. Manwin is informed and believes, and on that basis avers, that, at all times relevant herein, Defendant Martin was acting in concert with Defendant Bulgin. Manwin is further informed and believes, and on that basis avers, that Defendant Martin and Defendant Bulgin transferred the infringing Manwin Domains between each other to conceal their ownership.

12. Plaintiff is unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, inclusive. Plaintiff is informed and believes, and on that basis avers, that DOES 1 through 10, and each of them, either directly performed the acts alleged herein or were acting as the agent, principal, alter ego, employee, representative, or otherwise participated in the acts alleged herein with other Defendants. Accordingly, Defendants DOES 1 through 10 are each liable for all of the acts alleged herein because they were the

cause in fact and proximate cause of all injuries suffered by Plaintiff as alleged herein. Plaintiff will amend the Complaint to state the true names of Defendants DOES 1 through 10 when their identity is discovered.

13. Plaintiff is informed and believes, and on that basis avers, that at all times relevant herein, each of the Defendants was the agent of each of the other Defendants and, in doing the things averred in this First Amended Complaint, was acting within the course and scope of such agency.

## **PLAINTIFF AND ITS TRADEMARKS**

14. Manwin owns and licenses one of the largest portfolios of premium adult-oriented website domain names and trademarks. Manwin's websites, which include pornhub.com, youporn.com, brazzers.com, tube8.com, and webcams.com, are among the most visited websites on the Internet, and millions of people throughout the world visit Manwin's websites each day. In addition, under license from Playboy Enterprises, Inc., Manwin operates and manages all "Playboy" online content and runs Playboy Television worldwide, using the "Playboy Premium Entertainment" label.

15. Manwin has invested millions of dollars and countless employee hours to develop its reputation in the adult content industry. As a result of that effort and expense, the Manwin name and those of its brands, including its brand "BRAZZERS," have come to be associated in the minds of the public with high-quality adult-oriented content. Accordingly, Manwin owns valid and enforceable trademarks in the names "MANWIN" and "BRAZZERS," among others (the "Manwin Marks"). Each of the Manwin Marks is the subject of a pending trademark application before the United States Patent and Trademark Office.

## DEFENDANTS AND THEIR UNLAWFUL CONDUCT

16. Commencing in or about July 2011, Defendants engaged in a ruthless and unrelenting campaign of unlawful and harassing conduct against Manwin and its trademarks. Manwin is informed and believes, and on that basis avers, that this campaign was undertaken for the express purpose of coercing Manwin to pay substantial sums to Defendants to stop their unlawful conduct and to purchase a number of unlawfully acquired, infringing domain names.

17. Manwin is informed and believes, and on that basis avers, that between July and August 2011, one or more of Defendants, including Defendants Bulgin and Martin, registered or acquired (or caused to be registered or acquired) numerous domain names containing Manwin trademarks, including but not limited to the domain names www.manwin.net, www.manwin.co, www.manwinsucks.com, and www.manwin.us (the "Manwin Domains"). Each of these domain names was registered by in bad faith, with the intent to trade off or profit from the Manwin Marks.

18. Shortly after acquiring the Manwin Domains, one or more of Defendants, using the alias "Chris Hill" (at e-mail address chrisH@manwin.net), offered to sell the domain name www.manwin.net to Manwin for $100,000. When Manwin rejected that offer, "Chris Hill" advised Manwin that it can "kiss [my] rear" and threatened to sell the domain name to another cybersquatter to "get massive traffic and blow you off the #1 spot in search engines." For the following three months, Defendants, acting individually or in concert, undertook a coordinated campaign intended to force Manwin into purchasing the Manwin Domains.

19. First, Manwin is informed and believes, and on that basis avers, that to conceal their cybersquatting activities and defend their registrations from challenge (including before a domain name arbitration under the Uniform Dispute

Mitchell Silberberg & Knupp LLP

4575548.3/43277-00096

Resolution Procedure ("UDRP")), Defendants registered and operated the infringing Manwin Domains using various aliases and fake personas. For example, Defendants re-registered the domain name www.manwin.net using the fake name "Gill Manwinder," a purported businessman from the United Kingdom who was in the process of setting up various businesses using his family name ("Manwinder"). Similarly, Defendants registered the domain name www.manwin.co using the fake name "Yi Weng," who purported to be a Chinese woman who maintains a weblog ("blog") to discuss issues of spirituality and charity. In an attempt to justify use of the Manwin trademark, Defendants titled this website "ManWin – the huMAN WINdow to the Soul."

20. Second, Manwin is informed and believes that to cause Manwin to believe that harm would befall Manwin and its trademarks if it failed to immediately purchase the Manwin Domains, Defendants sent fabricated e-mails between their fake personas, or to each other, with a copy to Manwin. In those e-mails, Defendants pretended these various "individuals" were communicating about collective action against Manwin. For example, on September 13, 2011, "Chris Hill" wrote an e-mail to "contact@manwinsucks.com," purporting to suggest that Hill and the administrator of manwinsucks.com "compare notes" and take action to "dilute" the Manwin name.

21. Third, Manwin is informed and believes, and on that basis avers, that one or more of Defendants created a website www.manwinsucks.com to disseminate false, misleading, and defamatory statements about Manwin's purported business practices. Among the false and defamatory statements published by on this website were the following purported "facts" about Manwin:

- Manwin "create[s] user accounts at their free porn websites and upload[s] illegal content found all over the net that they didnt [sic] pay for."
- Manwin "use[s] illegal content to make money."

1      •   Manwin "own[s] a shitload or[sic] websites that are Adult oriented
2 and they push traffic to these sites using Pirate Bay…."
3      •   Manwin's websites are "a messed up scam but they like it and are
4 completely fine in using illegal tube sites that use peoples private adult videos to
5 sell their own products. If that is not a illegal scam i don't[sic] know what is."
6      •   "Manwin…recently had assets seized by the US government since
7 they were said to be doing illegal financial schemes through the state of Georgia."
8     Manwin is informed and believes, and on that basis avers, that Defendants
9 knew that the foregoing statements were false and misleading. Nevertheless,
10 Defendants published them with the deliberate intent to harm Manwin.
11 Specifically, Defendants' intent in posting these defamatory statements was to
12 cause those seeking information about Manwin via search engines to instead
13 retrieve the defamatory material, along with links to Defendants'
14 "manwinsucks.com" domain name. By doing so, Defendants hoped to drive up the
15 value of their website and then sell that website to Manwin at a profit.
16     22.   Third, Manwin is informed and believes, and on that basis avers, that
17 Defendants engaged in a variety of activities that were designed to interfere with
18 Manwin's business relationships and other activities. For example:
19     (a)   On or about October 18, 2011, one or more of the Defendants,
20 again using the "Gill Manwinder" name, filed a fraudulent "letter of protest," in
21 connection with Manwin's trademark application pending before the United States
22 Patent and Trademark Office ("USPTO"). In this "letter of protest," "Gill
23 Manwinder" claimed that Manwin's trademark registration would harm his
24 purported "family name" and "family started company." Additionally, the letter
25 advised the USPTO to evaluate Manwin's "actions as depicted on website [sic]
26 such as ManwinSucks.com. This site shows their [sic] is someone or a group who
27 opposes their company so much they created an entire website."

(b) On or about August 18, 2011, a user going by the alias "Radishdreams" began posting on a variety of popular websites frequented by those working in the adult industry that Manwin was attempting to strongarm "Yi Weng" (the purported owner) into relinquishing her domain name. Manwin is informed, believes, and on that basis avers that "Radishdreams" is one or more of the Defendants.

(c) In or about the end of 2011, after learning that Manwin was engaged in litigation against ICM (the entity that controls the registry for the .xxx top-level domain), one or more of the Defendants exhorted members of the public to register infringing Manwin-related domain names and then re-direct those domains to ICM.

(d) On or about August 22, 2011, using the fake name "Jim Jagen," one or more of the Defendants contacted Manwin's business partners at Playboy and accused Manwin of using "stolen property" and not "car[ing] much for the law or about how things should be done."

(e) On or about October 23, 2011, using the anonymous e-mail address contact@manwinsucks.com, one or more of the Defendants threatened to obtain and publish Manwin's confidential and proprietary documents and financial information.

23. In January 2012, after an extensive investigation, Manwin discovered that "Gill Manwinder," "Yi Weng," "Chris Hill," "contact@Manwinsucks.com," and "Jim Jagen" were all aliases of Defendant Bulgin, and that all e-mail correspondence from these individuals originated from Bulgin. Upon information and belief, "Radishdreams" also is Bulgin. Manwin's investigation revealed that Bulgin and the other Defendants were engaged in an elaborate scam to force Manwin to purchase the Manwin Domains. Accordingly, on or about January 12, 2012, Manwin served Bulgin with a formal demand to cease his activity and

immediately transfer the Manwin Domains. Bulgin acknowledged his activities, claimed that he had purchased the names in order to "secure" them for Manwin, and agreed to transfer the Manwin Domains. However, a few days later, Bulgin reneged on his agreement and claimed that his "associates" would not transfer the domain names. And, on January 31, 2012, "Gill Manwinder" contacted Manwin, demanding that Manwin pay him $4,300 to transfer the domain name www.manwin.net.

24. On April 5, 2012, after Manwin had served Defendant Bulgin with the original complaint in this action, Bulgin insisted that the owner of the infringing Manwin Domains was James Martin. Manwin is informed and believes, and on that basis avers, that in fact Defendant Bulgin transferred to Defendant Martin the infringing Manwin Domains www.manwin.net, www.manwin.co, and www.manwinsucks.com. Manwin is also informed and believes, and on that basis avers, that, as of the date of this First Amended Complaint, Defendant Martin was the owner of the infringing Manwin Domain www.manwin.us. Manwin is informed and believes, and on that basis avers, at all times relevant herein, Defendant Martin was and was acting in concert with Defendant Bulgin.

25. On April 20, 2012, Manwin was contacted by another individual calling himself "Gill Stevens." This individual purported to be acting on behalf of defendant Martin and transferred to Manwin the infringing Manwin Domains www.manwin.net, www.manwin.co, and www.manwinsucks.com. Manwin is informed and believes, and on that basis avers, that "Mr. Stevens" is a false name and in fact is either Bulgin or Martin. Additionally, Mr. "Stevens" did not reveal that in fact many other infringing domain names were registered to Mr. Martin but were not being transferred to Manwin.

26. However, on or about May 15, 2012, Manwin discovered that Defendants had apparently shifted their infringing and defamatory activities to

Twitter and Blogspot. Specifically, an individual using the handle @ManwinSucks made defamatory postings on Twitter (hereinafter the "Twitter Account"). Many of these Twitter postings, in turn, linked to one or more BlogSpot pages which feature defamatory posts about Manwin, including serious, unfounded accusations that Manwin was involved in child pornography (hereinafter the "Blogspot Pages"). Manwin is informed and believes, and on that basis avers, that Defendants are the owners and operators of the Twitter Account and Blogspot Pages.

## FIRST CLAIM FOR RELIEF

[Violation of the Anti-Cybersquatting Act – 15 U.S.C. § 1125(d)]

27. Manwin realleges each and every allegation set forth in Paragraphs 1 through 26, inclusive, and incorporates them by reference herein.

28. Manwin owns all rights in and to the Manwin Marks. The Manwin Marks are distinctive and famous.

29. Defendants have registered, trafficked in, and/or used the infringing Manwin Domains and Blogspot page, which are identical or confusingly similar to the Manwin Marks. Indeed, the infringing Manwin Domains and Blogspot Page each incorporate the Manwin Marks.

30. Defendants' use of the infringing Manwin Domains and Blogspot Page has at all times been an intentional and willful attempt to profit, in bad faith, from the Manwin Marks. Among other things, (a) Defendants have no trademark or other intellectual property rights in the Manwin Marks or the infringing Manwin Domains; (b) Defendants are not making any *bona fide* noncommerical or fair use of the Manwin Marks; (c) Defendants intend to divert traffic from the official Manwin websites, or otherwise attract users looking for information concerning Manwin; (d) the Manwin Marks are well-known marks, associated throughout the

world with Manwin and its websites and adult entertainment services; (e) Defendants at all times knew that they do not possess any trademark, other intellectual property rights, or any other rights whatsoever in the Manwin Marks, and registered the infringing Manwin Domains and Blogspot Page with (and despite) that knowledge.

31. As a direct and proximate result of Defendants' conduct, Manwin is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Manwin is entitled to maximum statutory damages of $100,000 pursuant to 15 U.S.C. § 1117(d).

32. Manwin further is entitled to its attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a).

33. As a result of Defendants' acts and conduct, Manwin has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Manwin is informed and believes, and on that basis avers, that, unless enjoined and restrained by this Court, Defendants will continue to infringe Manwin's valuable trademarks. Manwin is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## SECOND CLAIM FOR RELIEF

[Defamation]

34. Manwin realleges each and every allegation set forth in Paragraphs 1 through 33, inclusive, and incorporates them by reference herein.

35. Each of the statements made by Defendants and quoted in paragraph 21 above is false. Likewise, Defendants made false postings using the Twitter Account and on the Blogspot page, including serious, unfounded allegations that Manwin was involved in child pornography. These statements have created false

and defamatory impressions and, therefore, have damaged Manwin's reputation and caused economic harm.

36. Defendants had knowledge of the statements' falsity or acted with malice and/or reckless disregard for their falsity when they were made.

37. The defamatory statements were published on websites available worldwide, including in this judicial district.

38. By reason of the false and defamatory statements published by Defendants, Manwin has been injured in its good name, reputation and business, portrayed in a false light and has been brought into disgrace and disrepute.

39. As a direct and proximate result of Defendants' above-described defamatory publications, Manwin has sustained damages in an amount to be determined at trial.

40. Defendants' above-described publications were done with fraud and malice and were intended to cause injury to Manwin. Manwin is, therefore, entitled to an award of punitive damages.

41. Defendants' acts have caused, and will continue to cause, irreparable injury to Manwin. Manwin has no adequate remedy at law and thus is damaged in an amount not yet determined.

### THIRD CLAIM FOR RELIEF

[Intentional Interference with Prospective Advantage]

42. Manwin realleges each and every allegation set forth in Paragraphs 1 through 41, inclusive, and incorporates them by reference herein.

43. As alleged herein, Manwin has enjoyed existing business and economic relations Playboy, whereby Manwin manages worldwide online content under the "Playboy" trademark and runs Playboy TV, under license from Playboy Enterprises, Inc.

44. Defendants knew of the relationship between Manwin and Playboy, and intended to disrupt that relationship.

45. Defendants engaged in wrongful conduct by e-mailing Playboy using the alias "Jim Jagen" and falsely accused Manwin of using "stolen property," and not "car[ing] much for the law or about how things should be done."

46. Defendants' intentionally wrongful actions disrupted Manwin's relationship with Playboy, and Manwin suffered harm to its reputation, in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

[Unfair Competition – Cal. Bus. & Prof. Code § 17200 and Common Law]

47. Manwin realleges each and every allegation set forth in Paragraphs 1 through 46, inclusive, and incorporates them by reference herein.

48. The Manwin Marks are wholly associated with Manwin due to Manwin's extensive use and promotion in connection with its website and adult entertainment services. Therefore, and as such, Manwin is deserving of having its marks adequately protected with respect to the conduct of its business.

49. Based on the acts described herein, Defendants have engaged in wrongful, unfair and unlawful business practices, including in violation of California Business and Professions Code Section 17200 and California common law.

50. As a result of Defendants' aforesaid conduct, Manwin has suffered substantial damage and irreparable harm constituting an injury for which Manwin has no adequate remedy at law. Unless this Court enjoins Defendants' conduct, Manwin will continue to suffer irreparable harm. Manwin also has suffered loss of profits and other damages as a result of Defendants' aforesaid conduct. On the

14

statutory unfair competition claim, Manwin seeks only disgorgement of profits and does not seek damages at law.

## PRAYER FOR RELIEF

WHEREFORE, Manwin respectfully requests judgment against Defendants as follows:

1. Preliminarily and permanently enjoining Defendants, their agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with them, from using the Manwin Marks, or the infringing Manwin Domains, or any other name or mark or domain name that is likely to cause confusion, to cause mistake, or to deceive with respect to Manwin's trademarks or service marks, or from competing unfairly with Manwin;

2. Preliminarily and permanently enjoining Defendants, their agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with them, from registering or using any domain name containing any of Manwin's trademarks or service marks, including but not limited to the Manwin Marks; from making any use of Manwin's trademarks or service marks that is likely to cause confusion, to cause mistake, or to deceive; and from using any of Manwin's trademarks or service marks to compete unfairly with Manwin.

3. Preliminarily and permanently enjoining Defendants, their agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with them, from disseminating false, defamatory, or misleading statements concerning Manwin, including but not limited to statements made via Blogspot or Twitter.

4. Directing Defendants to transfer to Manwin all infringing domain names, including but not limited to the domain name www.manwin.us;

5. Awarding Manwin statutory damages under 15 U.S.C. § 1117(d);

6. Awarding Manwin its damages and Defendants' profits derived by reason of the unlawful acts complained of herein as provided by law;

7. Awarding Manwin its reasonable attorneys' fees, prejudgment interest, and costs of suit as provided by law;

8. Such other relief as the Court may deem just and proper.

DATED: June 6, 2012

MARC E. MAYER
EMILY F. EVITT
MITCHELL SILBERBERG & KNUPP LLP

By: _____
Marc E. Mayer
Attorneys for Plaintiff

4575548.3/43277-00096

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable of right by jury.

DATED: June 6, 2012

MARC E. MAYER
EMILY F. EVITT
MITCHELL SILBERBERG & KNUPP LLP

By: _____
Marc E. Mayer
Attorneys for Plaintiff