1    MARC E. MAYER (SBN 190969)
     mem@msk.com
2    EMILY F. EVITT (SBN 261491)
     efe@msk.com
3    MITCHELL SILBERBERG & KNUPP LLP
     11377 West Olympic Boulevard
4    Los Angeles, California 90064-1683
     Telephone:  (310) 312-2000
5    Facsimile:   (310) 312-3100

6    Attorneys for Plaintiff Manwin Licensing
     International S.à.r.l.

7

8                UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   MANWIN LICENSING INTERNATIONAL SARL, a Luxembourg Limited Liability Company, | CASE NO.  CV12-02484 GW (SHx) |
| 12 | The Honorable George H. Wu |
| 13 | **PLAINTIFF'S NOTICE AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT NICHOLAS BULGIN** |
| 14             Plaintiff, | |
| 15             v. | [Declaration of Antoine Gignac; Declaration of Marc E. Mayer; and [Proposed] Order and Judgment filed concurrently herewith] |
| 16   NICHOLAS BULGIN, a/k/a "Gill Manwinder," "Yi Weng," "Chris Hill," "contact@Manwinsucks.com," "Jim Jagen," and "Radishdreams", an individual, JAMES MARTIN, an individual, and Does 1-10, inclusive, | |
| 17 | |
| 18 | Date:       February 21, 2013 |
| 19           Defendants. | Time:       8:30 a.m.<br>Ctrm.:      10 |

20

21

22

23

24

25

26

27

28

**TO DEFENDANT NICHOLAS BULGIN:**

**PLEASE TAKE NOTICE THAT** on February 21, 2013, at 8:30 a.m., or as soon thereafter as this matter may be heard by the above-entitled Court, located at 312 North Spring Street Los Angeles, Los Angeles, California 90012, Plaintiff Manwin Licensing International S.à.r.l. ("Manwin") will and hereby does, move for an order entering default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against Defendant Nicholas Bulgin, a/k/a "Gill Manwinder," "Yi Weng," "Chris Hill," "contact@Manwinsucks.com," "Jim Jagen," and "Radishdreams" ("Bulgin").

Manwin requests the following relief:

1.      A permanent injunction, ordering that Bulgin and all persons acting under his direction or control (including but not limited to their agents, representatives and employees), shall immediately and permanently cease and desist from:

(a)      registering any domain names containing the word "Manwin" or any of Manwin's trademarks, including but not limited to "Manwin" and "Brazzers" or any domain names that are confusingly similar to Manwin's trademarks;

(b)      creating any Twitter accounts, Blogspot pages, or other blogs or websites using any of Manwin's trademarks, including but not limited to "Manwin" and "Brazzers," or that are confusingly similar to Manwin's trademarks;

(c)      further disseminating, publishing, or re-publishing any statements falsely accusing Manwin or its employees, owners, agents, or

representatives, including Manwin's owner, Fabian Thylmann, of criminal conduct, including, trafficking in child pornography, sexual misconduct, pedophilia, or child abduction;

2.     A monetary award to Manwin in the sum of $400,000, constituting maximum statutory damages for Bulgin's acts of unlawful cybersquatting in connection with the domain names www.manwin.net, www.manwin.co, www.manwinsucks.com, and www.manwin.us;

3.     Attorneys' fees in the amount of $11,600, pursuant to Local Rule 55-3;

4.     An order requiring Google, Blogspot, Twitter, and any other service provider to immediately remove the Twitter account "ManwinExposed," and the Blogspot pages located at http://manwinsucks.blogspot.com; http://manwinexposed.blogspot.com; http://manwinexposed.blogspot.de; http://manwinexposed.blogspot.ca; http://manwinexposed.blogspot.se; as well as all Blogspot pages beginning with the URL http://manwinexposed.blogspot that are located at any other top-level domain;

5.     An order requiring GoDaddy or any other appropriate domain name registrar to transfer to Manwin or confirm the prior transfer to Manwin of the following domain names: www.manwin.net, www.manwin.co, www.manwinsucks.com, brazzer.us, and www.manwin.us.

This Motion is brought on the grounds that entry of default judgment is appropriate in this case because: (1) Manwin has satisfied the procedural requirements of Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-1, (2) Manwin would suffer prejudice if default judgment is not entered because it would

Mitchell
Silberberg &
Knupp LLP

4723168.17

2

1    be denied the right to judicial resolution of its claims, (3) the Amended Complaint

2    sets forth *prima facie* claims showing that Bulgin is liable for violation of the Anti-

3    Cybersquatting Consumer Protection Act ("ACPA"), for defamation, and for unfair

4    competition, (4) the monetary award sought by Bulgin is factually and legally

5    supported and is reasonable, (5) there is no possibility of dispute regarding the

6    material facts of the case, and (6) Bulgin's default did not result from excusable

7    neglect.

8

9         Notice of this Motion was served on Bulgin by mailing a copy of this Motion

10   to his home address:  575 Gonzaga Circle, Hampton, GA 30228.

11

12        Bulgin is not a minor or incompetent person or in military service or

13   otherwise exempted under the Servicemembers Civil Relief Act (50 U.S.C. App.

14   § 521).

15

16        This Motion is based on this Notice of Motion and Motion for Default

17   Judgment, the attached memorandum of points and authorities, the declarations of

18   Antoine Gignac and Marc E. Mayer in support and exhibits thereto, and the

19   pleadings, files and other materials that are on file with the Court or may be

20   presented at the hearing.

21

22   Dated:  January 11, 2013          MARC E. MAYER

23                            EMILY F. EVITT
                              MITCHELL SILBERBERG & KNUPP LLP

24

25

26                          By:/s/ Marc E. Mayer

27                            Marc E. Mayer
                              Attorneys for Plaintiff

28                            Manwin Licensing International S.à.r.l.

Mitchell
Silberberg &
Knupp LLP

4723168.17

3

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS .................................................................... 1

III. MANWIN IS ENTITLED TO ITS REQUESTED RELIEF .......................... 7

    A.   Manwin Has Satisfied The Procedural Requirements For Entry Of Default Judgment Against Defendant Bulgin ...................... 8

    B.   The Allegations Of The Amended Complaint, Taken As True, Establish Liability On Each Of Manwin's Claims .................... 9

    C.   The Eitel Factors Warrant Entry Of Default Judgment ..................... 12

IV. THE REQUESTED RELIEF IS APPROPRIATE ........................................ 14

    A.   Manwin Is Entitled To $400,000 In Statutory Damages For Bulgin's Violations Of The ACPA ............................................ 14

    B.   Manwin Is Entitled To A Permanent Injunction ............................... 18

    C.   Manwin Is Entitled To Its Reasonable Attorneys' Fees ................... 23

V.   CONCLUSION ................................................................................... 25

Mitchell
Silberberg &
Knupp LLP

4723168.17

i

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

Ashcroft v. Free Speech Coal.,
    535 U.S. 234 (2002) ...............................................................20, 21

Belks Media v. OnlineNIC,
    C09-00198 HRL, 2010 WL 7786122, at *4 (N.D. Cal. Aug. 23,
    2010), C 09-00198 SBA, 2011 WL 5038576 (N.D. Cal. Oct. 24,
    2011)........................................................................................19, 20

City of Carlsbad v. Shah,
    08CV1211 AJB WMC, 2012 WL 424418 (S.D. Cal. Feb. 9,
    2012)........................................................................................19, 20

Earthquake Sound Corp. v. Bumper Indus.,
    352 F.3d 1210 (9th Cir. 2003).......................................................24

eBay Inc. v. MercExchange, LLC,
    547 U.S. 388 (2006) .....................................................................18

Eitel v. McCool,
    782 F.2d 1470 (9th Cir. 1986)..................................................passim

Electronics Boutiques Holdings Corp. v. Zuccarini,
    No. Civ.A. 00-4055, 2000 WL 1622760 (E.D. Pa. 2000)...............17, 18, 24

Elektra Entm't Group Inc. v. Bryant,
    No. CV 03-6381GAF, 2004 WL 783123 (C.D. Cal. Feb. 13,
    2004)........................................................................................8, 12, 14

Elektra Entm't Group Inc. v. Crawford,
    226 F.R.D. 388 (C.D. Cal. 2005) ...................................................12

Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.,
    559 F.3d 985 (9th Cir. 2009).........................................................20

Iyogi Holding PVT Ltd. v. Secure Remote Support Inc.,
    No. C 11-0592 CW, 2011 WL 6260364 (N.D. Cal. Dec. 15,
    2011)........................................................................................22

Mitchell
Silberberg &
Knupp LLP

4723168.17

ii

# TABLE OF AUTHORITIES

**Page(s)**

iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.,
    No. C-11-05-92, 2011 WL 6291793, at *1 (N.D. Cal. Oct. 25,
    2011) ............................................................................................... 22, 23

Kingsley Books, Inc. v. Brown,
    354 U.S. 436 (1957) ......................................................................... 21, 22

Lahoti v. Vericheck, Inc.,
    708 F. Supp. 2d 1150 (W.D. Wash. 2010) ........................................ 17, 24

Lee Myles Assocs. Corp., V. Paul Rubke Enters., Inc.,
    557 F. Supp. 2d 1134 (S.D. Cal. 2008) ............................................ 10, 11

Louis Vuitton Malletier and Oakley, Inc. v. Veit,
    211 F. Supp. 2d 567 (E.D. Pa. 2002) ............................................. 9, 17, 22

Marcelos v. Dominguez,
    No. C 08-00056 WHA, 2009 WL 230033 (N.D. Cal. Jan. 29,
    2009) ....................................................................................................... 13

Martin v. Reynolds Metals Co.,
    224 F. Supp. 978 (D. Or. 1963) ....................................................... 19, 22

Meadows v. Dom. Rep.,
    817 F.2d 517 (9th Cir. 1987) ................................................................. 13

Oakley, Inc. v. McWilliams,
    No. CV 09-07666 DDP, 2012 WL 2970534 (C.D. Cal. July 20,
    2012) ....................................................................................................... 22

PepsiCo, Inc. v. Cal. Sec. Cans,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ........................................... 12, 13

PepsiCo v. Triunfo-Mex, Inc.,
    189 F.R.D. 431 (C.D. Cal. 1999) .............................................................. 8

Shanghai Automation Instrument Co., Ltd. v. Kuei,
    194 F. Supp. 2d 995 (N.D. Cal. 2001) .................................................... 14

Solid Host, NL v. Namecheap,
    652 F. Supp. 2d 1092, 1120 (C.D. Cal. 2009) ........................................ 11

Mitchell
Silberberg &
Knupp LLP

4723168.17

iii

# **TABLE OF AUTHORITIES**

**Page(s)**

TeleVideo Sys., Inc. v. Heidenthal,
      826 F.2d 915 (9th Cir. 1987) ..................................................................... 8, 9

Verizon California Inc. v. Navigation Catalyst Sys., Inc.,
      568 F. Supp. 2d 1088 (C.D. Cal. 2008) ................................................... 9, 10

Verizon California Inc. v. OnlineNIC, Inc.,
      No. C 08-2832 JF (RS), 2009 WL 2706393 (N.D. Cal. Aug. 25,
      2009) ............................................................................................... 15, 17, 24

Visoneering Constr. v. U.S. Fidelity & Guar.,
      661 F.2d 119 (6th Cir. 1981) ........................................................................ 8

Warner Bros. Entm't Inc. v. Caridi,
      346 F. Supp. 2d 1068 (C.D. Cal. 2004) .................................................... 8, 14

Wecosign, Inc. v. IFG Holdings, Inc.,
      845 F. Supp. 2d 1072 (C.D. Cal. 2012) ...................................................... 18

## **STATE CASES**

Aguilar v. Avis Rent A Car Sys., Inc.,
      21 Cal. 4th 121, 141-42 (1999) ............................................................ 21, 22

Balboa Island Village Inn, Inc. v. Lemen,
      40 Cal. 4th 1141 (2007) .......................................................... 20, 21, 22, 23

Cel-Tech Communications, Inc., v. Los Angeles Cellular Telephone
      Company,
      20 Cal.4th 163 (1999) ................................................................................ 11

## **FEDERAL STATUTES**

15 U.S.C.
      1117 ....................................................................................... 13, 14, 23
      1125 .............................................................................................. 23
      1125(d) ............................................................................... 9, 10, 23

§ 43(a)(1)(B) of the Lanham Act ........................................................... 23

50 App. U.S.C. § 521 (Servicemembers Civil Relief Act) ......................... 9

Mitchell
Silberberg &
Knupp LLP

4723168.17

iv

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>STATE STATUTES</u>

Cal. Bus. & Prof. Code
  § 17200, *et. seq.* ....................................................................................11, 22
  § 17500 *et. seq.* ...........................................................................................22

## <u>RULES</u>

Federal Rule of Civil Procedure 55(b)(2)...........................................................7, 8, 9

Local Rule
  55 ......................................................................................................... 14
  55-1.................................................................................................7, 8, 9
  55-3...............................................................................................13, 24

## <u>OTHER AUTHORITIES</u>

<u>Imperial Tobacco Canada Limited v. N.B.</u>, WIPO Case No. DCO2010-
  0020 ................................................................................................. 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Since 2011, Defendant Nicholas Bulgin ("Bulgin") has mounted an escalating campaign of harassment and defamation against Plaintiff Manwin Licensing International S.à.r.l. ("Manwin").  Bulgin began by cybersquatting: he registered domain names that infringed Manwin's trademarks and tried to extort Manwin to purchase them back at a premium.  When Manwin refused to pay, Bulgin invented multiple fictitious personas who claimed to be the owners of the infringing domain names and wrote disparaging e-mails among them, copying Manwin's business partners.  Bulgin's harassment escalated again when he posted defamatory statements about Manwin, including accusations that Manwin was involved in child pornography, on one of his infringing websites.

Bulgin did not stop his harassment after Manwin filed the instant lawsuit. Instead, Bulgin switched platforms and began defaming Manwin and its owner on Twitter and multiple BlogSpot pages.  Furthermore, Bulgin has refused to participate in this litigation, although he has been in communication with Manwin and its counsel.  Indeed, he has made direct threats against Manwin throughout the course of this litigation, including threatening to hack Manwin's computer servers and expose personal information about Manwin's customers.

Manwin has suffered and continues to suffer harm, and Bulgin will not stop unless the Court orders him to do so.  By this motion, Manwin therefore requests that the Court enter default judgment against Bulgin, issue a permanent injunction prohibiting Bulgin from further trademark infringement and from repeating his defamatory statements, and award Manwin statutory damages and attorneys' fees.

### II.   STATEMENT OF FACTS

**Manwin, its Business, and its Trademarks.**  Plaintiff Manwin Licensing International S.à.r.l. ("Manwin"), is a Luxembourg company that is part of a group

of companies collectively known by that name (the "Manwin Companies").  First

Amended Complaint ("FAC"), ¶ 9.  Manwin is in the business of owning, acquiring,

and licensing its portfolio of trademarks and website domain names, which is one of

the largest portfolios of premium adult-oriented domain names and trademarks in

the world.  Id. ¶ 14.  Manwin's trademarks and domain names are used by Manwin

Companies located throughout the world, including in Luxembourg, Montreal, Los

Angeles, and Cyprus.  Declaration of Antoine Gignac ("Gignac Decl."), ¶ 2.

Manwin's affiliates and licensees include Manwin USA, Inc., Manwin D.P. Corp.,

and Playboy Plus Entertainment, Inc., all of which have principal places of business

in Los Angeles, California.  Id.

Manwin's portfolio of domain names and trademarks includes some of the

most valuable domain names and trademarks in the world, including the domain

names pornhub.com, youporn.com, brazzers.com, tube8.com, and webcams.com,

and the related trademarks MANWIN, YOUPORN, BRAZZERS, PORNHUB,

TUBE8, and others.  FAC, ¶¶ 14-15; Gignac Decl., ¶ 3.  Manwin's affiliated

websites are among the most visited websites on the Internet, and millions of people

throughout the world visit these websites each day.  FAC, ¶ 14.  Manwin has

invested millions of dollars and countless employee hours to develop its reputation

in the adult content industry.  Id. ¶ 15.  As a result of that effort and expense, the

Manwin name and those of its brands, including its brand "BRAZZERS," have

come to be associated in the minds of the public with high-quality adult-oriented

content.  Gignac Decl., ¶ 3.  Accordingly, Manwin owns valid and enforceable

trademarks in the names "MANWIN" and "BRAZZERS," among others (the

"Manwin Marks").  FAC, ¶ 15; Gignac Decl., ¶ 3.

**Bulgin and His Unlawful Conduct.**  Bulgin is an individual residing in

Hampton, Georgia.  FAC, ¶ 10.  Bulgin apparently is in the business of acquiring

and selling domain names containing trademarks belonging to others (i.e.

1  "cybersquatting").  Bulgin's cybersquatting targets have included Manwin, Imperial

2  Tobacco, and others.  Id.; Declaration of Marc E. Mayer ("Mayer Decl."), ¶ 4.

3      In or about the second half of 2011, Bulgin commenced a campaign of

4  unlawful and harassing conduct against Manwin and its trademarks, apparently for

5  the purpose of coercing Manwin to pay substantial sums to acquire various Manwin-

6  related domain names registered by Bulgin.  FAC, ¶ 16.  Specifically, Bulgin (or

7  those working in concert with him), registered or acquired (or caused to be

8  registered or acquired) numerous domain names containing Manwin's trademarks,

9  including but not limited to the domain names www.manwin.net, www.manwin.co,

10  www.manwinsucks.com, and www.manwin.us (the "Manwin Domains").[1]  FAC,

11  ¶ 17; Mayer Decl., ¶ 2.  Each of these domain names was registered by in bad faith,

12  with the intent to trade off or profit from the Manwin Marks.  Id.

13      Shortly after acquiring the Manwin Domains, Bulgin and his cohorts, using

14  the alias "Chris Hill" (chrisH@manwin.net), offered to sell the domain name

15  www.manwin.net to Manwin for $100,000.  FAC, ¶ 18.  When Manwin rejected that

16  offer, "Chris Hill" advised Manwin that it can "kiss [my] rear" and threatened to sell

17  the domain name to another cybersquatter to "get massive traffic and blow you off

18  the #1 spot in search engines."  Id.  For the following three months, Bulgin, acting

19  individually or in concert with the other defendants, undertook a coordinated

20  campaign intended to force Manwin into purchasing the Manwin Domains.  Id.

21      First, Bulgin registered, transferred, and operated the infringing Manwin

22  Domains using various aliases and fake personas.  Id. ¶ 19.  For example, Bulgin

23  and his accomplices re-registered the domain name www.manwin.net using the fake

24  name "Gill Manwinder," a purported businessman from the United Kingdom who

25

26  [1] The infringing Manwin Domains listed in the in the original Complaint were
   www.manwin.net, www.manwin.co, www.manwinsucks.com, and www.brazzer.us.
27  Upon further investigation and obtaining written discovery, the list of Infringing
   Manwin Domains in the First Amended Complaint was amended to
28  www.manwin.net, www.manwin.co, www.manwinsucks.com, and
   www.manwin.us.  Mayer Decl., ¶ 2.

Mitchell
Silberberg &
Knupp LLP

4723168.17

3

1   was in the process of setting up various businesses using his family name

2   ("Manwinder"). Id. Similarly, Bulgin and his cohorts registered the domain name

3   www.manwin.co using the fake name "Yi Weng," who purported to be a Chinese

4   woman who maintains a weblog ("blog") to discuss issues of spirituality and

5   charity. Id. In an attempt to justify use of the Manwin trademark, Bulgin titled this

6   website "ManWin – the huMAN WINdow to the Soul." Id.

7         Second, in order to cause Manwin to believe that harm would befall Manwin

8   and its trademarks if it failed to immediately purchase the Manwin Domains, Bulgin

9   and the other defendants sent fabricated e-mails among their fake personas, or to

10  each other, with a copy to Manwin. Id. ¶ 20. In those e-mails, Bulgin and his

11  accomplices pretended these various "individuals" were communicating about

12  collective action against Manwin. Id. For example, on September 13, 2011, "Chris

13  Hill" wrote an e-mail to "contact@manwinsucks.com," purporting to suggest that

14  Hill and the administrator of manwinsucks.com "compare notes" and take action to

15  "dilute" the Manwin name. Id.

16        Third, Bulgin created a website (www.manwinsucks.com) which he used to

17  disseminate false, misleading, and defamatory statements about Manwin's purported

18  business practices. Id. ¶ 21. Among the false and defamatory statements published

19  on this website were the following purported "facts" about Manwin:

20        ●     Manwin "create[s] user accounts at their free porn websites and

21  upload[s] illegal content found all over the net that they didnt [sic] pay for." Id.

22        ●     Manwin "use[s] illegal content to make money." Id.

23        ●     Manwin "own[s] a shitload or[sic] websites that are Adult oriented and

24  they push traffic to these sites using Pirate Bay…." Id.

25        ●     Manwin's websites are "a messed up scam but they like it and are

26  completely fine in using illegal tube sites that use peoples private adult videos to sell

27  their own products. If that is not a illegal scam i don't[sic] know what is." Id.

● "Manwin…recently had assets seized by the US government since they were said to be doing illegal financial schemes through the state of Georgia." Id.

Fourth, Bulgin engaged in a variety of activities that were designed to interfere with Manwin's business relationships and other activities. Id. ¶ 22. For example:

● On or about October 18, 2011, Bulgin (again using the "Gill Manwinder" name), filed a fraudulent "letter of protest," in connection with Manwin's trademark application pending before the United States Patent and Trademark Office ("USPTO"). In this "letter of protest," "Gill Manwinder" claimed that Manwin's trademark registration would harm his purported "family name" and "family started company." Additionally, the letter advised the USPTO to evaluate Manwin's "actions as depicted on website [sic] such as ManwinSucks.com. This site shows their [sic] is someone or a group who opposes their company so much they created an entire website." Id.

● On or about August 18, 2011, Bulgin, using the alias "Radishdreams" began posting on a variety of popular websites frequented by those working in the adult industry that Manwin was attempting to strongarm "Yi Weng" (the purported owner of www.manwin.co) into relinquishing her domain name. Id.

● In or about the end of 2011, after learning that Manwin was engaged in litigation against ICM (the entity that controls the registry for the .xxx top-level domain), Bulgin exhorted members of the public to register infringing Manwin-related domain names and then re-direct those domains to ICM. Id.

● On or about August 22, 2011, using the fake name "Jim Jagen," Bulgin and his cohorts contacted Manwin's business partners at Playboy and accused Manwin of using "stolen property" and not "car[ing] much for the law or about how things should be done." Id.

● On or about October 23, 2011, using the anonymous e-mail address contact@manwinsucks.com, Bulgin and his accomplices threatened to obtain and

1   publish Manwin's confidential and proprietary documents and financial information.

2   Id.

3       **Bulgin Continues To Harass Manwin After The Lawsuit Is Filed.**  In

4   January 2012, after an extensive investigation, Manwin discovered that "Gill

5   Manwinder," "Yi Weng," "Chris Hill," "contact@Manwinsucks.com," and "Jim

6   Jagen" were all aliases of Defendant Bulgin, and that all e-mail correspondence

7   from these individuals originated from Bulgin.  Id. ¶ 23.  Accordingly, on or about

8   January 12, 2012, Manwin served Bulgin with a formal demand to cease his activity

9   and immediately transfer the Manwin Domains.  Id.  Bulgin acknowledged his

10  activities, claimed that he had purchased the names in order to "secure" them for

11  Manwin, and agreed to transfer the Manwin Domains.  However, a few days later,

12  Bulgin reneged on his agreement and claimed that his "associates" would not

13  transfer the domain names.  And, on January 31, 2012, "Gill Manwinder" contacted

14  Manwin, demanding that Manwin pay him $4,300 to transfer the domain name

15  www.manwin.net.  Id.

16      Manwin filed the original complaint in this action on March 22, 2012.  Mayer

17  Decl., ¶ 7.  On April 18, 2012, Manwin filed its *ex parte* application for leave to

18  take immediate discovery.  Id. ¶  8.  On or about May 15, 2012, Manwin discovered

19  that Bulgin and his cohorts had apparently shifted their infringing and defamatory

20  activities to Twitter and BlogSpot.  Id. ¶ 11.  Specifically, an individual using the

21  handle @ManwinSucks made defamatory postings on Twitter (hereinafter the

22  "Twitter Account").  Id.  Many of these Twitter postings, in turn, linked to one or

23  more BlogSpot pages featuring defamatory posts about Manwin, including serious,

24  unfounded accusations that Manwin and its owner Fabian Thylmann were involved

25  in child pornography (hereinafter the "BlogSpot Page").  Id.; Gignac Decl.,¶ 9.  The

26  Blogspot Page was initially located at http://manwinsucks.blogspot.com, but in June

27

28

Mitchell
Silberberg &
Knupp LLP

4723168.17

6

2012, Bulgin moved the BlogSpot Page to http://manwinexposed.blogspot.com/.[2]

Mayer Decl., ¶ 11.  Among the statements Bulgin posted on the BlogSpot Page are:

- "Mr Thylman is way past his prime age yet he regularly courts teenagers who still attend high school in his country we hear.  Some people would call those girls fresh and in perfect condition for sexual intercourse.  We call those people pedophiles!  Whether its legal in his country or not, its fucking gross mate, that a grown man does this, its bloody fucking sick."  (July 5, 2012)  Id.

- "Anonymous will take down any company who host child pornography and its high time companies who makes money off nothing but porn, is looked at really hard. I honestly wouldn't doubt if they offered child pornography because they have everything else."  (June 16, 2012)  Id.

- "There is talk about Manwin owning child pornography websites. Here is why it makes sense.  Manwin operates many porn websites through many people around the world and they have been known for shady operations in the past and currently. Half of their staffs own domains with fake aliases and half the accounts on their tube site are created in house."  (May 10, 2012)  Id.

As of the date of this Motion, the above defamatory statements and others remain posted on the BlogSpot Page.  Id. ¶ 12.

## III.   MANWIN IS ENTITLED TO ITS REQUESTED RELIEF

In addition to the applicable procedural requirements, see Local Rule 55-1 and Fed. R. Civ. P. 55(b)(2), a court's decision to grant default judgment is guided by the following factors (known as the Eitel factors):

---

[2] The BlogSpot page is also available at international domains, including http://manwinexposed.blogspot.de; http://manwinexposed.blogspot.ca, and http://manwinexposed.blogspot.se .  Manwin is informed and believes that the BlogSpot page is also located at other international "top-level domains," beginning with the URL http://manwinexposed.blogspot, but ending with different suffixes. Mayer Decl. ¶ 11.

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986); see also Warner Bros. Entm't Inc. v. Caridi, 346 F. Supp. 2d 1068, 1071-73 (C.D. Cal. 2004) (granting default judgment based on Eitel factors). While the decision to grant a default judgment is left to the sound discretion of the Court, "default judgments are more often granted than denied." PepsiCo v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999).

In determining whether to grant a default judgment, "[t]he general rule of law [is] that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). See also Visoneering Constr. v. U.S. Fidelity & Guar., 661 F.2d 119, 124 (6th Cir. 1981) ("Well pleaded allegations of the petition . . . are taken as admitted on a default judgment."). While a plaintiff must "prove up" damages when seeking a default judgment, this evidentiary burden is "relatively lenient." Elektra Entm't Group Inc. v. Bryant, No. CV 03-6381GAF (JTLX), 2004 WL 783123, at *2 (C.D. Cal. Feb. 13, 2004). In determining damages, the Court may rely on declarations submitted by the plaintiff. See Fed. R. Civ. P. 55(b)(2).

Manwin has satisfied the procedural requirements of the Federal and Local Rules, the Eitel factors weigh in favor of entering default judgment against Defendant Bulgin, and Manwin's requested relief is reasonable and supported.

**A.      Manwin Has Satisfied The Procedural Requirements For Entry Of Default Judgment Against Defendant Bulgin.**

The requirements of Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-1 plainly have been met. On July 11, 2012, Manwin served the summons and

1   First Amended Complaint on Defendant Bulgin.  Mayer Decl. ¶ 14.  On October 2,

2   2012, the Clerk entered Defendant Bulgin's default on the First Amended

3   Complaint.  Id. ¶ 15.  Defendant Bulgin is not an infant or incompetent.  Id. ¶ 16;

4   See L.R. 55-1(c).  The Servicemembers Civil Relief Act (50 App. U.S.C. § 521)

5   does not apply.  Mayer Decl., ¶ 16; See L.R. 55-1(d).  Manwin timely notified

6   Defendant Bulgin of this Motion for Default Judgment.  Mayer Decl., ¶ 17.  See

7   L.R. 55-1(e); Fed. R. Civ. P. 55(b)(2).

8        **B.**     **The Allegations Of The Amended Complaint, Taken As True,**

9        **Establish Liability On Each Of Manwin's Claims.**

10   As noted, after the entry of default, the factual allegations of the complaint are

11   taken as true.  Heidenthal, 826 F.2d at 917-18.  Manwin's First Amended Complaint

12   pleads facts sufficient, as a matter of law, to establish that Defendant Bulgin is liable

13   for violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"),

14   defamation, and unfair competition.

15   **ACPA Violation**.  Manwin owns all rights in and to the Manwin Marks.

16   FAC, ¶ 28; Gignac Decl., ¶ 3.  "The ACPA authorizes a trademark owner to bring a

17   civil suit against any person who: '(i) has a bad faith intent to profit from that mark

18   ...; and (ii) registers, traffics in, or uses a domain name that ... is identical or

19   confusingly similar to or [in certain cases] dilutive of that mark....'"  Verizon

20   California Inc. v. Navigation Catalyst Sys., Inc., 568 F. Supp. 2d 1088, 1094 (C.D.

21   Cal. 2008) quoting 15 U.S.C. § 1125(d)(1)(A).  Here, Bulgin violated the ACPA

22   because he:

23        ●  Registered, trafficked in, and used the infringing Manwin Domains and

24   BlogSpot page, which incorporated the Manwin Marks, in a manner that was

25   identical or confusingly similar to the Manwin Marks.  15 U.S.C. 1125(d)(1)(A)(ii).

26   See, e.g., Louis Vuitton Malletier and Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 582

27   (E.D. Pa. 2002) (domain name "louisvuitton-replicas.com" violated the ACPA).

28

Mitchell
Silberberg &
Knupp LLP

4723168.17

9

1    • Used the infringing Manwin Domains and BlogSpot Page in a bad faith

2  attempt to profit from the Manwin Marks.  FAC, ¶ 30.  Among other things,

3  Bulgin's bad faith was evidenced by the following:

4    • Bulgin has no trademark or other intellectual property rights in

5  the Manwin Marks or the infringing Manwin Domains, nor do the Manwin

6  Domains consist of Defendant Bulgin's legal name;

7    • Bulgin has not made any *bona fide* noncommerical or fair use of

8  the Manwin Marks;

9    • Bulgin intended to divert traffic from the official Manwin

10  websites, or otherwise attract users looking for information concerning

11  Manwin;

12    • Bulgin attempted to extort payment from Manwin for sale of the

13  Manwin Domains;

14    • Bulgin registered the Manwin Domains using the privacy service

15  Domains By Proxy, and operated the domains pseudonymously;

16    • Bulgin registered multiple domain names that infringed the

17  Manwin Marks; and

18    • The Manwin Marks are distinctive and famous.

19  Id. ¶¶ 28, 30; Gignac Decl., ¶ 3.  See Verizon California, 568 F. Supp. 2d at 1096

20  (C.D. Cal. 2008) (discussing the non-exclusive factors that courts consider when

21  analyzing bad faith under 15 U.S.C. § 1125(d)(1)(B)(i)).

22    **Defamation.**  Bulgin used the Manwin Domains and continues to use the

23  Twitter Account and BlogSpot Page to defame Manwin and its owner Fabian

24  Thylmann.  FAC, ¶ 35; Mayer Decl. ¶ 12.  Ninth Circuit courts apply state law to

25  determine whether the speech at issue is defamatory.  Lee Myles Assocs. Corp., V.

26  Paul Rubke Enters., Inc., 557 F. Supp. 2d 1134, 1139 (S.D. Cal. 2008).  Under

27  California law, the elements of defamation are: "(a) a publication that is (b) false, (c)

28  defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that

Mitchell
Silberberg &
Knupp LLP

4723168.17

10

1  causes special damage."  Id.  quoting 5 B.E. Witkin, Summary of Cal. Law § 529

2  (10th ed. 2005).  Manwin has satisfied each of these elements:

3      ●   Defendant Bulgin's defamatory statements were published on websites

4  available worldwide, including in this judicial district;

5      ●   Defendant Bulgin made false statements about Manwin and its owner

6  Fabian Thylmann via the Manwin Domains, and continues to make false postings

7  using the Twitter Account and the BlogSpot Page, including serious, unfounded

8  allegations of involvement in child pornography;

9      ●   These statements have created false and defamatory impressions and,

10  therefore, have damaged Manwin's reputation and caused economic harm;

11      ●   Defendant Bulgin has made no claim of privilege;

12      ●   By reason of the false and defamatory statements published by Bulgin,

13  Manwin has been injured in its good name, reputation and business, portrayed in a

14  false light and has been brought into disgrace and disrepute.

15  FAC; ¶¶ 35-41, Gignac Decl., ¶ 12.  Bulgin's acts have caused, and will continue to

16  cause, irreparable injury to Manwin.  FAC, ¶ 41; Gignac Decl. ¶¶ 10,12-13.

17      **Unfair Competition.**  Likewise, Manwin has established a claim for unfair

18  competition against Bulgin based on Bulgin's violation of the ACPA:

19      ●   California law defines unfair competition to "include any unlawful,

20  unfair or fraudulent business act or practice…."  Cal. Bus. & Prof. Code § 17200.

21  California courts broadly construe the application of unfair competition.  As the

22  California Supreme Court explained, "By proscribing any unlawful business

23  practice, section 17200 borrows violations of other laws and treats them as unlawful

24  practices that the unfair competition law makes independently actionable."  Cel-

25  Tech Communications, Inc., v. Los Angeles Cellular Telephone Company, 20

26  Cal.4th 163, 180 (1999).

27      ●   Therefore, Defendant Bulgin's violation of the ACPA (discussed

28  above) also constitutes a violation of California's unfair competition law.  See Solid

Mitchell
Silberberg &
Knupp LLP

4723168.17

11

1   Host, NL v. Namecheap, Inc., 652 F. Supp. 2d 1092, 1120 (C.D. Cal. 2009)

2   ("Because [plaintiff] has sufficiently alleged that [defendant] engaged in a business

3   practice that violated a law other than the UCL, i.e., the ACPA, it has stated an

4   unfair competition claim.").

5        **C.      The Eitel Factors Warrant Entry Of Default Judgment.**

6        ***(1) Possibility of Prejudice:***  The first Eitel factor considers whether Manwin

7   will suffer prejudice if default judgment is not entered.  Eitel, 782 F.2d at 1471-72.

8   Prejudice exists where, absent entry of a default judgment, the plaintiff would lose

9   the right to a judicial resolution of its claims and would be without other recourse of

10  recovery.  See Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D.

11  Cal. 2005); Bryant, 2004 WL 783123, at *3.  Without a default judgment, Manwin

12  will have no recourse against Bulgin's ongoing campaign of defamation and

13  harassment.  Gignac Decl., ¶ 13.  Bulgin continues to publish outrageous false

14  statements about Manwin and its owner, Fabian Thylmann, including accusations of

15  criminal conduct, such as trafficking in child pornography, sexual misconduct,

16  pedophilia, or child abduction. Mayer Decl., ¶¶ 11-12.   Such statements are causing

17  ongoing harm to Manwin and to Mr. Thylmann, and a default judgment is necessary

18  to stop them.  Gignac Decl., ¶ 13.  Additionally, without a default judgment,

19  Manwin will be deprived of the right to judicial resolution of its claims for violation

20  of the ACPA, defamation, and unfair competition because Bulgin has refused to

21  appear in these proceedings.

22       ***(2) Merits of Claim and (3) Sufficiency of Complaint:***  The second and third

23  Eitel factors "require that a plaintiff state a claim on which the [plaintiff] may

24  recover."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1175 (C.D. Cal.

25  2002) (internal citations omitted).  As set forth above, Manwin has stated numerous

26  claims for relief.

27       ***(4) Amount at Stake:***  Under the fourth Eitel factor, "the court must consider

28  the amount of money at stake in relation to the seriousness of [Defendants']

Mitchell
Silberberg &
Knupp LLP

4723168.17

12

conduct." <u>PepsiCo</u>, 238 F. Supp. 2d at 1176.  For each domain name that violates the ACPA, the trademark owner is entitled to recover statutory damages in an amount between $1,000 and $100,000.  15 U.S.C. 1117(d).  Manwin alleges that Bulgin and his accomplices registered four infringing domain names.  FAC, ¶ 17; Mayer Decl., ¶¶ 2,10.  In light of Bulgin's outrageous conduct, Manwin seeks maximum statutory damages for each infringing domain name, for a total of $400,000.  Manwin also seeks $11,600 in attorneys' fees, pursuant to Local Rule 55-3.

*(5) Possibility of Dispute Regarding Material Facts:*  The fifth <u>Eitel</u> factor requires the Court to consider the possibility of a dispute as to a material fact.  <u>Eitel</u>, 782 F.2d at 1471-72.  As a threshold matter, there is no possible dispute concerning the material facts because the factual allegations of Manwin's First Amended Complaint are taken as true.  <u>Marcelos v. Dominguez</u>, No. C 08-00056 WHA, 2009 WL 230033, at *4 (N.D. Cal. Jan. 29, 2009).  In any event, the facts alleged in the First Amended Complaint are confirmed by Manwin's investigation as well as the evidence produced by third parties.

*(6) Possibility of Excusable Neglect:*  Under the sixth <u>Eitel</u> factor, the Court considers whether Bulgin's default resulted from excusable neglect.  <u>Eitel</u>, 782 F.2d at 1471-72.  Bulgin failed to answer or file a responsive pleading despite *repeated* notice of this action and his infringing conduct.  Bulgin's conduct is not excusable, including because he was served with both the original complaint and First Amended Complaint, yet never made any attempt to file a responsive pleading to either.  Mayer Decl., ¶ 14.  Furthermore, Defendant Bulgin communicated with Manwin and its counsel multiple times during the course of this litigation, which revealed that he was aware of the case, yet he defiantly refused to participate.  Mayer Decl., ¶¶ 5-6.  <u>See</u> <u>Meadows v. Dom. Rep.</u>, 817 F.2d 517, 521 (9th Cir. 1987) ("A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer.").  Additionally, Manwin

served on Bulgin copies of its applications seeking discovery from Bulgin's online service providers.  Mayer Decl., ¶¶ 8.  Bulgin should have received further notice from those third parties that subpoenas had been issued seeking information about Bulgin and the identity of his accomplices.  Further, Bulgin did not seek to lift the default or in any way defend against this lawsuit, though he had ample notice and opportunity to do so.  There is no excusable neglect.  <u>Shanghai Automation Instrument Co., Ltd. v. Kuei</u>, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (defendant's default when properly served with complaint and notice of entry of default not attributable to excusable neglect).

*(7) Policy for Deciding Case on the Merits:*  The final <u>Eitel</u> factor considers the preference for deciding cases on the merits.  <u>Eitel</u>, 782 F.2d at 1471-72.  "However, this factor, standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered."  <u>Caridi</u>, 346 F. Supp. 2d at 1073.  Indeed, Rule 55 specifically authorizes the termination of a case before a hearing on the merits in these precise circumstances.  <u>See</u> <u>Bryant</u>, 2004 WL 783123, at *5.  Here, the only reason this lawsuit cannot proceed to the merits is because Bulgin, ***after notice***, failed to appear and defend this action.

In sum, the balance of <u>Eitel</u> factors weigh in Manwin's favor, and the Court should grant this motion and enter default judgment against Defendant Bulgin.

## IV.   THE REQUESTED RELIEF IS APPROPRIATE

### A.   <u>Manwin Is Entitled To $400,000 In Statutory Damages For Bulgin's Violations Of The ACPA.</u>

At its election, a trademark owner may recover either statutory or actual damages for violation of the ACPA.  15 U.S.C. § 1117(d).  Here, Manwin elects to recover statutory damages.  For each infringing domain name, the trademark owner may recover statutory damages in an amount between $1,000 and $100,000.  15 U.S.C. § 1117(d).  The award may be any amount within this range that "the court

Mitchell
Silberberg &
Knupp LLP

4723168.17

14

1  considers just."  Courts consider the following factors in determining the amount of

2  the award:

3       [1] egregiousness or willfulness of the defendant's cybersquatting,

4       [2] the defendant's use of false contact information to conceal its

5       infringing activities, [3] the defendant's status as a "serial"

6       cybersquatter -- i.e., one who has engaged in a pattern of registering

7       and using a multitude of domain names that infringe the rights of other

8       parties -- and [4] other behavior by the defendant evidencing an attitude

9       of contempt towards the court or the proceedings.

10

11  Verizon California Inc. v. OnlineNIC, Inc., No. C 08-2832 JF (RS), 2009 WL

12  2706393, at *3 (N.D. Cal. Aug. 25, 2009).  Here, each of these factors weighs in

13  favor of awarding maximum statutory damages of $100,000 per infringement

14  against Defendant Nicholas Bulgin.

15       **(1) Egregiousness or Willfulness of Cybersquatting.**  From the start,

16  Bulgin's conduct was willful, and it became progressively more egregious.  Bulgin

17  registered the Manwin Domains knowing that they infringed Manwin's trademarks.

18  FAC, ¶ 17.  Indeed, he selected these domain names despite – and because – of their

19  infringing nature.  Id.  Next, Bulgin attempted to extort payment from Manwin for

20  the Manwin Domains.  Id. ¶ 18.  When Manwin refused to pay, Bulgin became

21  increasingly belligerent.  He created a series of false personas who sent e-mails to

22  each other and to Manwin's business partners disparaging Manwin.  Id. ¶¶ 20, 45.

23  Then he used the alias "Gill Manwinder," and attempted to interfere with Manwin's

24  trademark registration.  Id. ¶ 22.  Perhaps most egregiously, Bulgin used the

25  manwinsucks.com domain name as a platform to make false and defamatory

26  statements about Manwin, and he has continued this defamation via Twitter and the

27  BlogSpot Page.  Id. ¶¶ 21, 26; Mayer Decl., ¶¶ 11-12.

Mitchell
Silberberg &
Knupp LLP

28

4723168.17

15

**(2) Use of False Contact Information.** Bulgin has gone to great lengths to conceal ownership of the Manwin Domains. First, the Manwin Domains were registered using the "privacy service" Domains by Proxy. Mayer Decl., ¶ 8. A privacy service such as Domains by Proxy registers domains in its own name, on behalf of clients. Id. ¶ 10. The purpose of this service is to shield the domain name owner from being identified through publicly available searches (sometimes referred to as "WhoIs" searches), which otherwise allow members of the public to look up the name and contact information of the domain name registrant. Id. Second, after this lawsuit was filed, Bulgin orchestrated a shell game to conceal ownership of the Manwin Domains: three of the domains were transferred, first to "Josh Green," and then to Defendant James Martin. Id. ¶ 7. Third, Bulgin has attempted to conceal ownership of the Manwin Domains through his use of multiple false personas. FAC, ¶ 23; Mayer Decl., ¶ 6.

**(3) Pattern of Serial Cybersquatting.** Bulgin is a professional cybersquatter. He has registered hundreds of infringing domains, including http://www.netflix.me/; http://www.smart-cloud.net/; and http://www.verizonwirelesssucks.co. Mayer Decl., ¶ 3, Ex. 1. And this is not the first time Bulgin has been caught. He recently tried to extort payments from the company Imperial Tobacco by purchasing the domain name "imperialtobacco.co" and then creating a false persona, "Victor Verdugo," in an attempt to defraud the World Intellectual Property Organization ("WIPO") Arbitration Panel. See Mayer Decl., ¶ 4, Ex. 2. The WIPO Panel found that Defendant Bulgin's conduct was a "calculated scam, designed to extract from the Complainant as much money for the transfer of the Domain Name as possible." See Imperial Tobacco Canada Limited v. N.B., WIPO Case No. DCO2010-0020.

**(4) Attitude of Contempt Toward the Court and Proceedings.** Finally, Bulgin has refused to participate in these proceedings. Mayer Decl., ¶ 14. He made no attempt to answer or otherwise respond to the original and First Amended

Mitchell
Silberberg &
Knupp LLP

4723168.17

16

Complaint, despite having been personally served with each of them.  Id. ¶ 14.
Bulgin's contempt and disregard for the Court and these proceedings is particularly
evident given that Bulgin has acknowledged to Manwin's counsel that he is aware
of this lawsuit, yet he refuses to engage in the judicial process.  Mayer Decl., ¶¶ 5-6,
14.  Additionally, Bulgin's use of the false persona "Gill Manwinder" and attempt to
interfere with Manwin's trademark registration proceedings reflect contempt for the
U.S. Patent and Trademark Office.  See FAC, ¶ 22.

In sum, each of these factors weighs in favor of maximum statutory damages.
Bulgin is a serial infringer, who engaged in a campaign of anonymous, egregious
cybersquatting designed to harass and defame Manwin and harm its business.  He
has no respect for this Court (nor for the USPTO nor WIPO), and he will only be
deterred by an award of maximum statutory damages.  An award of maximum
statutory damages is consistent with courts' awards in similarly egregious cases of
cybersquatting.  See, e.g., Electronics Boutiques Holdings Corp. v. Zuccarini, No.
Civ.A. 00-4055, 2000 WL 1622760, at *8 (E.D. Pa. 2000) (court held that repeat
cybersquatter "boldly thumbs his nose at the rulings of this court and the laws of our
country.  Therefore, I find that justice in this case requires damages … in the
amount of $100,000 per infringing domain name, for a total of $500,000."); Lahoti
v. Vericheck, Inc., 708 F. Supp. 2d 1150, 1170-71 (W.D. Wash. 2010) (awarding
maximum statutory damages of $100,000 based on factors including defendant's
"bad faith and his deliberate and knowing acts, his pattern and practice of registering
domain names that incorporate the trademarks of others, his efforts to extort
thousands of dollars in exchange for transfer of the Domain Name…."); Louis
Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 585 (E.D. Pa. 2002)
(awarding $100,000 for infringing domain name on motion for default judgment "in
light of the Defendants' egregious acts in blatantly using Plaintiff Louis Vuitton's
registered trademark to sell counterfeit Louis Vuitton products").  See also Verizon,

Silberberg &
Knupp LLP

4723168.17

17

1    2009 WL 2706393, at *1 (awarding $50,000 for each violation of the ACPA for a

2    total default judgment award of $33.15 million).

3        **B.    Manwin Is Entitled To A Permanent Injunction.**

4        Manwin seeks a permanent injunction against Bulgin's cybersquatting and

5    defamation.  Manwin asks the Court to enjoin Bulgin from:  (1) creating domain

6    names, Twitter accounts, or Blogspot Pages that use Manwin's trademarks or are

7    confusingly similar to Manwin's trademarks; and (2) further disseminating,

8    publishing, or re-publishing Bulgin's previous defamatory statements about Manwin

9    and its owner Fabian Thylmann.  Entry of permanent injunctive relief is warranted

10   where: (1) the plaintiff has suffered an irreparable injury; (2) the remedies available

11   at law are inadequate to compensate for that injury; (3) a remedy in equity is

12   warranted considering the balance of hardships; and (4) the public interest will not

13   be disserved by a permanent injunction.  eBay Inc. v. MercExchange, LLC, 547

14   U.S. 388, 391 (2006).  All of these factors favor granting a permanent injunction

15   here.

16       **(1) Irreparable Injury.**  First, irreparable harm exists here because Bulgin is

17   causing injury to Manwin's goodwill and reputation.  Gignac Decl., ¶¶ 10-13; see

18   Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012)

19   (granting default judgment on trademark, false designation of origin, cybersquatting

20   and unfair competition claims and issuing permanent injunction: "Plaintiff would

21   suffer irreparable injury from the ongoing damages to its goodwill and diversion of

22   customers to counterfeit services.")  Where a defendant engages in cybersquatting in

23   violation of the ACPA, "[i]t is impossible to determine the number of potential and

24   existing customers diverted from [plaintiff's] website by [defendant's] domain

25   misspellings," and "it is impossible to calculate the loss of reputation and

26   goodwill…."  Electronics Boutique, 2000 WL 1622760, at * 9 (granting permanent

27   injunction and finding irreparable harm).  As in these cases, Bulgin's cybersquatting

1   causes Manwin severe reputational harm and damages Manwin's goodwill.

2   According, Bulgin's conduct is causing irreparable injury to Manwin.

3       Irreparable injury can also exist in the context of defamation.  For example, in

4   <u>Martin v. Reynolds Metals Co.</u>, where cross-defendants had posted a defamatory

5   billboard-type sign containing false statements about cross-plaintiff's business, the

6   court granted a preliminary injunction and reasoned that "[t]he sign is a continuing

7   tort causing irreparable injury to a property interest…." 224 F. Supp. 978, 984 (D.

8   Or. 1963) aff'd, 337 F.2d 780 (9th Cir. 1964).  Here, Bulgin's Twitter account and

9   BlogSpot Page, which remain posted, are the modern electronic equivalents of the

10  billboard in <u>Martin</u> and are causing Manwin irreparable injury.

11      **(2) Inadequate Legal Remedy.**  Second, monetary damages are inadequate

12  to deter Bulgin's campaign of cybersquatting and defamation.  Gignac Decl., ¶ 13.

13  Bulgin's infringement of the Manwin Marks has been willful and egregious.  FAC,

14  ¶ 30.  Bulgin did not cease his infringing and defamatory activities after Manwin

15  filed suit, and has refused to appear in this litigation; there is no reason to believe

16  Bulgin will stop.  See <u>Belks Media v. OnlineNIC</u>, C09-00198 HRL, 2010 WL

17  7786122, at *4 (N.D. Cal. Aug. 23, 2010) report and recommendation adopted, C

18  09-00198 SBA, 2011 WL 5038576 (N.D. Cal. Oct. 24, 2011) (granting permanent

19  injunction after entering default judgment in ACPA case: "monetary damages are

20  also inadequate on their own; [defendant's] conduct can be considered willful and it

21  has given no indication that it will not infringe in the future as it has chosen not to

22  participate in this litigation."). <u>See also City of Carlsbad v. Shah</u>, 08CV1211 AJB

23  WMC, 2012 WL 424418, at*20 (S.D. Cal. Feb. 9, 2012) (granting permanent

24  injunction in copyright, trademark, and ACPA case where defendant continued to

25  use infringing domains after plaintiff initiated the lawsuit:  "Given [defendant's]

26  behavior to date, there is a continued threat that [defendant] will continue to engage

27  in such unlawful conduct. [Plaintiff's] injury cannot be remedied by monetary

28

Mitchell
Silberberg &
Knupp LLP

4723168.17

19

1    compensation alone.  As such, an injunction is the only remedy available to limit the

2    potential of future injury.").

3       Additionally, damages are an inadequate remedy against Bulgin's ongoing

4    campaign of defamation.  Gignac Decl.,¶ 13.  The California Supreme Court has

5    held that "a judgment for money damages will not always give the plaintiff effective

6    relief from a continuing pattern of defamation."  <u>Balboa Island Village Inn, Inc. v.</u>

7    <u>Lemen,</u> 40 Cal. 4th 1141, 1158 (2007) (allowing injunction prohibiting defendant

8    from repeating statements that had been adjudicated to be defamatory).

9       **(3) Balance of Hardships.**  Likewise, the third factor favors granting

10    Manwin's request for a permanent injunction.  Manwin's trademarks and reputation

11    will continued to be harmed by Bulgin's cybersquatting and defamation.  Gignac

12    Decl., ¶¶11, 13.  By contrast, Bulgin will not be harmed by the proposed injunction

13    because he is merely being prohibited from violating the law.  <u>See</u> City of Carlsbad,

14    2012 WL 424418 ("There is no harm to [defendant] since an injunction would

15    merely require [defendant] to comply with the law.")  Defamation is not protected

16    by the First Amendment.  <u>Ashcroft v. Free Speech Coal.</u>, 535 U.S. 234, 245-46

17    (2002) ("The freedom of speech has its limits; it does not embrace certain categories

18    of speech, including defamation").  Furthermore, the injunction sought by Manwin

19    will be limited to preventing Bulgin from repeating statements that have already

20    been determined defamatory, and thus it is not an invalid prior restraint on speech,

21    as discussed in greater detail below.  <u>See</u> <u>Balboa Island</u>, 40 Cal. 4th at 1156.

22       **(4) Public Interest.**  The fourth and final factor also supports granting the

23    permanent injunction, which is necessary not just to protect Manwin's rights, but to

24    protect the public interest as well.  In trademark cases, "[t]he public has an interest

25    in avoiding confusion between two companies' products."  <u>Internet Specialties W.,</u>

26    <u>Inc. v. Milon-DiGiorgio Enterprises, Inc.</u>, 559 F.3d 985, 993 n.5 (9th Cir. 2009)

27    (affirming permanent injunction).  The court granted a permanent injunction after

28    entering default judgment on Plaintiff's ACPA claim in <u>Belks Media</u>, reasoning,

Mitchell
Silberberg &
Knupp LLP

4723168.17

1    "the public interest is served when trademark holders' rights are protected against

2    infringement."  No. C09–00198 HRL., 2010 WL 7786122, at * 4.  Additionally,

3    although there is a public interest in free speech, Bulgin's defamatory statements

4    about Manwin are not protected by the First Amendment.  Ashcroft, 535 U.S. at

5    245-46.  Moreover, because Manwin's requested injunction is limited to statements

6    that have already been determined defamatory, it is not an invalid prior restraint, and

7    will not have a chilling effect on speech.  See Balboa Island, 40 Cal. 4th at 1156 (no

8    prior restraint) and at 1152-53 (surveying U.S. Supreme Court decisions on

9    injunctive relief against speech).  See also, Kingsley Books, Inc. v. Brown, 354 U.S.

10   436, 445 (1957) (upholding statute that enjoined written material already determined

11   to be obscene, reasoning "it studiously withholds restraint upon matters not already

12   published and not yet found to be offensive.").

13       Courts have approved of injunctions like the one sought here by Manwin.  In

14   Balboa Island, the California Supreme Court held that injunctive relief was proper

15   where defendant mounted a defamatory campaign against plaintiff Village Inn,

16   which included telling neighbors that "there was child pornography and prostitution

17   going on in the Inn, and the Village Inn was selling drugs and was selling alcohol to

18   minors."  40 Cal. 4th at 1145.  The court held that "following a trial at which it is

19   determined that the defendant defamed the plaintiff, the court may issue an

20   injunction prohibiting the defendant from repeating the statements determined to be

21   defamatory."  Id. at 1155-56.

22       Similarly, in Aguilar v. Avis Rent A Car Sys., Inc., the California Supreme

23   Court held that an injunction prohibiting defendant from repeating racial epithets

24   that had been determined to violate the Fair Employment and Housing Act was not

25   contrary to the First Amendment.  21 Cal. 4th 121, 141-42 (1999).  After surveying

26   U.S. Supreme Court decisions, the Aguilar court concluded, "once a court has found

27   that a specific pattern of speech is unlawful, an injunctive order prohibiting the

28   repetition, perpetuation, or continuation of that practice is not a prohibited 'prior

1    restraint' of speech." Id. at 140.  Thus, in both Balboa Island and Aguilar, the court

2    approved of injunctions against the continuation of speech that had been determined

3    to be defamatory or unlawful.  This is consistent with Kingsley Books, Inc. v.

4    Brown, where the U.S. Supreme Court upheld a statute that provided injunctive

5    relief against the further distribution of written material once it had been judicially

6    determined to be obscene.  354 U.S. at 438, 445.

7         Additionally, a Northern District of California court recently issued an

8    injunction against defamation in an ACPA case (where Plaintiff had not even

9    asserted a cause of action for defamation) that went beyond the scope of the

10   injunctions approved by the California Supreme Court in Balboa Island and

11   Aguilar.[3]  In iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc., plaintiff sued

12   defendants for making false, misleading, and defamatory statements about plaintiff's

13   business both on defendants' website and on an apparently neutral reviews website,

14   which was actually operated by defendants.  No. C-11-05-92, 2011 WL 6291793, at

15   *1 (N.D. Cal. Oct. 25, 2011) report and recommendation adopted sub nom. Iyogi

16   Holding PVT Ltd. v. Secure Remote Support Inc., No. C 11-0592 CW, 2011 WL

17   6260364 (N.D. Cal. Dec. 15, 2011).  Plaintiff alleged claims for: 1) intentional

18   interference with prospective economic advantage; 2) unlawful business practices

19   and unfair competition, Cal. Bus. Prof.Code § 17200, et. seq.; 3) common law unfair

20   competition; 4) false or misleading advertising -- Cal. Bus. & Prof.Code § 17500 et.

21

22   [3] Counsel for Manwin are also aware of the district court's recent decision in
     Oakley, Inc. v. McWilliams, No. CV 09-07666 DDP (RNBx), 2012 WL 2970534
23   (C.D. Cal. July 20, 2012), and respectively disagree with that decision.  Notably, the
     Oakley court acknowledged the decision in Martin v. Reynolds Metals Co., 224 F.
24   Supp. 978 (D. Or. 1963), where the district court issued a preliminary injunction
     ordering removal of a defamatory billboard.  The Oakley court pointed to the Martin
25   court's reasoning that "the court's injunction in this case would be both easy to carry
     out and easy to enforce – take down the sign, cease and desist until the claim is
26   appropriately adjudicated[,]"implying that the ease of enforcement was the critical
     factor in that decision.  If ease of enforcement is the issue, then Manwin, at the very
27   least, should be entitled to an order directing the removal of the existing Twitter and
     BlogSpot pages, which are the modern day equivalent of billboards.  Additionally,
28   Manwin notes that the Oakley court did not address the issue of past defamation.

Mitchell
Silberberg &
Knupp LLP

4723168.17

1    *seq.;* 5) trade libel; 6) false advertising in violation of § 43(a)(1)(B) of the Lanham

2    Act, 15 U.S.C. § 1125; and 7) violation of Anticybersquatting Consumer Protection

3    Act, 15 U.S.C. § 1125(d).  <u>Id.</u> at *2.  Plaintiff filed a motion for entry of default

4    judgment, and sought a permanent injunction.  <u>Id.</u> at *1.  The court entered default

5    judgment on all claims, except intentional interference with prospective advantage

6    and trade libel, and entered a permanent injunction that enjoined Defendants, among

7    other things, from "otherwise defaming, slandering, or libeling iYogi or its

8    employees, directors, principals, or officers…."  <u>Id.</u> at *20-21.  Thus, the court

9    granted an injunction that not only prohibited defendants from making statements

10   about plaintiff's business or posting false reviews (defendants' previous conduct),

11   but also more broadly prohibited defendants from "otherwise defaming, slandering,

12   or libeling iYogi or its employees, directors, principals, or officers…."  <u>Id.</u>  This

13   blanket injunctive relief was broader than the injunction against repeating

14   defamatory statements approved by the <u>Balboa Island</u> court.

15        Injunctive relief is appropriate here for several reasons.  As in <u>iYogi</u>, this

16   Court should grant an injunction against defamation following entry of default

17   judgment.  2011 WL 6291793, at *20.  Additionally, the injunctive relief sought by

18   Manwin is limited to enjoining Bulgin from repeating his previous defamatory

19   statements.  Thus it is analogous to the relief approved in <u>Balboa Island</u> and <u>Aguilar</u>

20   and narrower than the injunction granted in <u>iYogi</u>.  It therefore meets the

21   requirement that an injunction restraining speech be "no broader than necessary to

22   achieve its desired goals."  <u>Balboa Island</u>, 40 Cal. 4th at 1159, <u>quoting</u> <u>Madsen v.</u>

23   <u>Women's Health Center, Inc.</u>, 512 U.S. 753, 765 (1994).

24        **C.    <u>Manwin Is Entitled To Its Reasonable Attorneys' Fees.</u>**

25        The Lanham Act provides that "[t]he court in exceptional cases may award

26   reasonable attorney fees to the prevailing party."  15 U.S.C. 1117(a)(3).

27        While the term "exceptional" is not defined in the Act, in this Circuit "a case

28   is exceptional . . . where the infringement is willful, deliberate, knowing or

Mitchell
Silberberg &
Knupp LLP

4723168.17

1   malicious." Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1216 (9th

2   Cir. 2003) (affirming award of attorneys' fees).  Courts have held that violations of

3   the ACPA qualify as "exceptional" conduct meriting attorneys' fees.  For example,

4   in Lahoti v. Vericheck, Inc. the court awarded attorneys' fees based on violation of

5   the ACPA in light of the cybersquatter's "willful registration and use of the Domain

6   Name; attempts to extort thousands of dollars from [trademark owner] in exchange

7   for the Domain Name; disregard of [trademark owner's] trademark rights

8   notwithstanding his clear knowledge and actual notice of them; a pattern and

9   practice of cybersquatting, including a pattern and practice of abusive litigation

10  practices as a means to convince trademark owners to drop their domain name

11  claims or to pay for domain names; and his disregard for the submission of

12  inaccurate answers to interrogatories."  708 F. Supp. 2d at 1171.  See also

13  Electronics Boutiques, 2000 WL 1622760, at *8 (awarding attorneys' fees where

14  cybersquatter violated the ACPA and "acted in complete bad faith by knowingly and

15  intentionally trading on the goodwill and reputation of [plaintiff] in an attempt to

16  mislead the public."); Verizon California Inc. v. OnlineNIC, Inc., No. C 08–2832 JF

17  (RS), 2009 WL 2706393, at *10 (awarding attorneys' fees where, based on

18  registration of 663 infringing domains, "it is clear that [defendant's] intent was to

19  divert customers searching for [plaintiff's] websites.").

20         As in Lahoti, Bulgin willfully registered the Manwin Domain names in bad

21  faith, attempted to extort Manwin for payment, knowingly disregarded Manwin's

22  trademark rights, and repeatedly engaged in cybersquatting.  FAC, ¶ 17.

23  Furthermore, Bulgin's conduct was malicious because he used the Manwin Domains

24  as a platform for his campaign of defamation and harassment of Manwin.  Id.¶¶ 35-

25  36.  Thus, this is an exceptional case, and Manwin is entitled to reasonable

26  attorneys' fees.  Pursuant to Local Rule 55-3, Manwin seeks attorneys' fees of

27  $11,600.  See L.R. 55-3 (for a default judgment award in excess of $100,000,

28  attorneys' fees are $5,600 plus 2% of the amount over $100,000).

Mitchell
Silberberg &
Knupp LLP

4723168.17

24

1

## V.    CONCLUSION

2          For the foregoing reasons, Manwin respectfully requests that the Court enter

3    default judgment, and grant Manwin the requested relief.

4

5    DATED:  January 11, 2013              MARC E. MAYER
                                           EMILY F. EVITT
6                                          MITCHELL SILBERBERG & KNUPP LLP

7

8                                          By: /s/ Marc E. Mayer
                                              _____
9                                             Marc E. Mayer
                                              Attorneys for Plaintiff
10                                            Manwin Licensing International S.à.r.l.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27